## *In re* HELENA & LIVINGSTON SMELTING & REDUCTION CO.

*(Circuit Court, D. Montana. November 23, 1891.)*

**1. REMOVAL OF CAUSES—FEDERAL QUESTION—WATER-RIGHTS.**
An action in a state court, based upon an allegation that the defendant, in operating its quartz-mill, by means of a water-right claimed by it, has poured over the complainant's lands a quantity of tailings and *débris*, only questions the defendant's right to so use the land, and does not involve any right secured by Rev. St. U. S. §§ 2339, 2340, which declare that vested water-rights shall be protected, and all patents granted and pre-emption or homesteads allowed shall be subject thereto; and hence the cause is not removable to a federal court on the ground that it involves a right secured by the laws of the United States.

**2. SAME.**
Under Rev. St. U. S. § 2339, declaring that vested water-rights, "recognized and acknowledged by the local customs, laws, and the decisions of the courts," shall be protected, the question whether defendant, in using a water-right for the operation of his quartz-mill, has a right to pollute the water of the stream, is purely a question of local law, and cannot be made the ground of a removal to a federal court.

Petition by the Helena & Livingston Smelting & Reduction Company for a writ of *certiorari* commanding a state court of Montana to remove the cause of John J. Hall against said company to the United States circuit court. Writ denied.

*Cullen, Sanders & Shelton*, for petitioner.
*Adkinson & Miller*, for respondent.

KNOWLES, J. In this case the Helena & Livingston Smelting & Reduction Company petitions this court for a writ of *certiorari*, directed to
v.48f.no.8—39

the district court of the fifth judicial district, in and for the state of Montana, commanding said court to remove the cause of *John J. Hall* vs. *The Helena & Livingston Smelting & Reduction Company* to this court, and that a transcript of the record be made by the clerk of said district court, and, upon the payment or the tender of the fees therefor, to transmit the same forthwith to this court.  There is no dispute but that the petition for removal in this case was filed in the state court within the time prescribed by the statutes of the United States of 1887 and 1888, upon the subject of removal of causes from state to the federal courts.  The removal was not claimed in this case upon the ground that the parties were citizens of different states, but upon the ground that the cause was one arising under the laws of the United States. The question presented then for consideration is as to the correctness of this claim.  The amount in controversy, the petition sets forth, exceeds $2,000, exclusive of costs and interest.  This is sufficient.  In order to show the court that the cause is one which arises under the laws of the United States, defendant has set forth in his petition for removal the following facts:

"That your petitioner is the owner of a certain concentrator and quartz-mill, situated at Corbin, in the county of Jefferson, state of Montana, and is the owner of a certain mill-site and water-right.  That the said quartz-mill and concentrator has been in operation for a period of six years, and during all of said time has been engaged in concentrating and crushing ores from mines near it, and in the vicinity, in said county and state.  That the owner of said mill-site, quartz-mill, and concentrator holds title to the said mill-site, and the adjoining land which they occupy in their mining operations, and the water-right, and to each and every thereof, under letters patent from the United States.  Your petitioner further shows that it will be claimed by the plaintiff in this action upon the trial thereof, under the issues tendered by the complaint herein, that your petitioner, in operating its said mill and concentrator, and in using the waters aforesaid, has poured down upon and over the land set forth and described in plaintiff's complaint, a large quantity of tailings and *débris* from said mill, and has polluted the waters of Prickly Pear creek, which flow over the land of plaintiff in the operations of said mill and concentrator, to such an extent as to render the same unfit for the use of plaintiff."

Then follow allegations in the petition showing that defendant appropriated the waters of Prickly Pear creek, and erected its mill and concentrator, and acquired title to the premises on which they are erected, long prior to the time that plaintiff purchased his land from the United States, and that defendant's mill and concentrator were in operation before that time, and that defendant was accustomed to load the waters it had appropriated with tailings, and send the same down upon plaintiff's land, and that plaintiff received his patent subject to this right of defendant to load his waters so appropriated, and send them down upon plaintiff's land.

Defendant claims these rights by virtue of sections 2339 and 2340 of the Revised Statutes of the United States.  Let us see what these sections provide:

"Sec. 2339.  Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes have vested and

accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals for the purposes herein specified is acknowledged and confirmed; but whenever any person, in the construction of any ditch or canal, injures or damages the possession of any settler on the public domain, the party committing such injury or damage shall be liable to the party injured for such injury or damage. Sec. 2340. All patents granted, or pre-emption or homesteads allowed, shall be subject to any vested and accrued water-rights, or rights to ditches and reservoirs used in connection with such water-rights, as may have been acquired under or recognized by the preceding section."

It will be seen by reference to these sections that the right here conceded is that of water-rights, and the right of way for ditches and canals, and of the use of the public lands for reservoirs in connection with such water-rights. If we look at the allegations of defendant's petition for removal, it will be seen that it claims the right to use a portion of plaintiff's land as a place for depositing the tailings it sends down from its quartz-mill and concentrator upon the land of plaintiff. This is a different right from that of appropriating water, and constructing ditches and reservoirs connected with the same. It is the claim of an easement upon the land of plaintiff, and I cannot see that any such an easement as is claimed by defendant is granted to defendant in any manner in the above sections. This is not the claim of a right of way for a ditch, but of a right to deposit tailings on plaintiff's land. If defendant has this easement by prescription, that prescription right would arise under the state, and not under national, statutes.

Then it is set forth that defendant is polluting the waters of Prickly Pear creek to such an extent as to render the same unfit for plaintiff's use. Whether these waters so polluted are the waters of Prickly Pear creek appropriated by defendant does not fully appear. If they are not, I do not see how the right to pollute the waters not appropriated can be claimed under the above sections. If the waters polluted are those appropriated by defendant, then the question may arise, from whence this right to pollute these waters? The water-rights specified in section 2339 are those "recognized and acknowledged by the local customs, laws, and the decisions of the courts" in the localities where such rights are claimed. The laws referred to are local laws, and not national statutes. It will be seen, therefore, that in determining whether a party has a water-right, and its extent and character, the local customs, laws, and decisions of courts must be consulted and determined. The ascertainment of what these are involves no construction of any United States statute. This point, then, will be found decided in the case of *Trafton* v. *Nougues*, 4 Sawy. 178, where it was held that where the only question was, what are the local laws, rules, regulations, and customs by which the rights of the parties are governed? no federal question is presented. For these reasons I hold that this court has no jurisdiction of this cause, and the writ of *certiorari* is consequently denied.